(R.D. 11367)

C. J. Tower & Sons of Niagara, Inc., et al. v. United States

(Decided October 4, 1967)'

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Norman C. Schwartz* of counsel) for the plaintiffs.

*Carl Eardley,* Acting Assistant Attorney General (*Morris Braverman* and *Harold L. Grossman,* trial attorneys), for the defendant.

Landis, Judge: Plaintiffs in these appeals for reappraisement, consolidated for trial, are the customhouse brokers on some 41 entries filed at Buffalo, N.Y. (R62/4632) and 20 entries filed at Niagara Falls, N.Y. (R62/5596), covering sundry plastic articles (chiefly seats, hassocks, display racks, and so-called balloons), exported by Elasko Products, Ltd., Toronto, Canada (hereinafter referred to as Elasko, Canada), to Elasko Products, Ltd., Buffalo, N.Y. (hereinafter referred to as Elasko, Buffalo), during the period September 15, 1960, through December 14, 1961. Two Elasko, Canada, shipments, one to the Jamestown Furniture Mart, Jamestown, N.Y., the other to Spectrum Furniture, Highpoint, N.C., in the same export period, are included in these appeals.

The basic dispute, shaped by the pretrial rule 15 statements, is plaintiffs' claim that the imported articles should be valued on basis of export value rather than constructed value, as appraised, under

section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165. The official papers are in evidence.

Plaintiffs claim that the invoice unit purchase prices, less a 30 percent discount, noted on the invoices, represent the proper dutiable export values. The appraisements, at constructed value, are in Canadian dollars at unit prices, net packed, taken from column 6 of the special customs invoice filed with the several entries. Column 6, it should be noted, is the designated column for the seller to list his unit prices for home consumption, in this case, Canada.

Plaintiffs choose not to dispute an additional 1 percent discount noted on some of the invoices. A few scattered invoice items appraised in United States dollars (see entry No. 8115 in R62/5596 and entry No. 21521 in R62/4632), which the parties have also elected to ignore, are similarly not before me in these reappraisements.

Section 402 of the Tariff Act of 1930, as amended, provides that the value of imported merchandise shall be export value or, if it cannot be satisfactorily determined, then the United States or constructed value, in that order. Defendant devotes the first point of its brief to argument that plaintiffs' initial burden of proof is to prove the constructed values found by the appraiser are erroneous. This I take as an attempt to slant the burden of proof dictated by section 402 spelling out the preferred order of valuation. Export basis of valuation being preferred over constructed value basis, it follows that proof of an export value basis and the price at which the merchandise was freely sold for export will negate an appraisement at constructed value on basis alone, without regard to the values found by the appraiser. *Omni Products Corp. et al.* v. *United States*, 58 Cust. Ct. 675, R.D. 11291; *Union Carbide Corporation* v. *United States*, 58 Cust. Ct. 821, A.R.D. 222; *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 58 Cust. Ct. 834, A.R.D. 223. I review the record here, therefore, for proof of export value as defined by statute.

Section 402, as amended, defines export value as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever

nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\*   \*   \*   \*   \*   \*   \*

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

The trial record consists of testimony, adduced by plaintiffs, several pricelists (exhibits 1–A, 1–B, 1–C, and 1–D) introduced by plaintiffs, and two reports of the customs appraiser at Buffalo to the Commissioner of Customs, Division of Appraisement, Washington, D.C. (defendant's exhibits A and B).

Mr. Joseph Nail, general sales manager and vice president of Elasko, Canada, testified. The sum of his testimony, which is not in material dispute, follows:

Mr. Nail with his two brothers managed Elasko, Canada, and Elasko, Buffalo, in common ownership. Elasko, Canada, manufactured patented plastic articles. Elasko, Buffalo, was set up as an export sales base to distribute the plastic articles in the United States. There were no other manufacturers of the kind of plastic articles produced by Elasko, Canada, sold for home consumption in Canada and for export to the United States. Export sales were exclusively to Elasko, Buffalo, except for an "odd" two or three shipments sold direct to furniture stores in the United States. (Two such "odd" shipments, included in

these appeals, are entry No. 6788 shipment to Jamestown Furniture Mart, Jamestown, N.Y., and entry No. 7331 shipment to Spectrum Furniture, Highpoint, N.C. (R62/4632).

At the time of these exportations in 1960 and 1961, Elasko, Canada, sales for home consumption were about 70 percent to furniture stores, department stores, and gift shops, and 30 percent to distributors. Sales to stores in Canada were at list prices. Distributors in Canada bought at prices 30 percent off list to give them a markup on which to operate.

Mr. Nail testified that Elasko, Buffalo, the United States distributor, bought at the same Canadian list prices, less 30 percent discount, as the distributors in Canada but for a different reason, namely, to cover overhead costs tied to the Buffalo operation. He also stated that the prices paid by Elasko, Buffalo, were those on the Buffalo pricelist to retailers in the United States (exhibit 1–A), effective January 1961, less 30 percent. This apparent inconsistency in the testimony, as to the base price at which Elasko, Buffalo, bought, is clarified by the customs appraiser's report dated June 22, 1961 (defendant's exhibit A), indicating that Elasko, Buffalo, bought at prices stated in its own pricelist (exhibit B of the report which is the same as exhibit 1–A), less 30 percent, up to June 15, 1961, when Elasko, Canada, changed over to export prices based on Canadian list prices for home consumption (exhibit 1–B), less 30 percent. The latter prices, in Canadian currency, are reflected in the special customs invoices filed with the Buffalo entries (R62/4632), covering shipments after June 15, 1961. The unit purchase and export prices, United States currency, recited in the special customs invoices filed with entries prior to January 1961 are about 10 percent less than the unit prices recited in exhibit 1–A. Mr. Nail testified that, at one time, there was an increase in the export price of about 10 percent. (R. 38.) Buffalo and Niagara Falls entries, covering shipments between January 1961 and June 15, 1961, were invoiced at unit purchase prices and current export prices, United States currency, stated in exhibit 1–A with one exception, invoice items described as display racks were listed at $15 and invoiced at $10, United States currency. The price to Elasko, Buffalo, which included packing the plastic articles, ready for resale, and all incidental expenses, did not vary with the quantity purchased. There were no restrictions on what Elasko, Buffalo, could do with the imported plastic articles. Elasko, Buffalo, employed a sales staff to sell the plastic articles in the United States, and the merchandise was exported from Canada to fill orders taken in the United States.

Both sides agree that, in the context of these import transactions, Elasko, Buffalo, was a selected purchaser. The only open question is whether the 30 percent discount off list prices at which Elasko, Buffalo, bought fairly reflects the market value of the plastic articles sold by Elasko, Canada.

Plaintiffs square this case with *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841, and argue that *Acme* controls the facts here. The export transactions in *Acme* were between connected firms, the same as here, but I am inclined to agree with defendant that the facts are otherwise quite different. In *Acme*, a difference between the Canadian unit home consumption price and unit price for export was explained by certain expenses incurred in the Canadian market but not in the export market. The factual situation here reflects sales at list prices to retailers for home consumption and 30 percent off list to Canadian distributors for home consumption and for export to the selected United States distributor. Defendant uses entry No. 7055 (R62/5596) to drive home the point that the price to Elasko, Buffalo, was not the same as the distributor's price in Canada, as Mr. Nail testified, because in the special customs entry invoice the unit purchase prices are stated in United States currency and the home consumption prices are in Canadian currency. Entry No. 7055 is dated January 25, 1961. Exhibit 1–A is a list of Elasko, Buffalo, unit retail prices in United States currency and exhibit 1–B is a list of Elasko, Canada, unit retail prices for home consumption in Canadian currency. Mr. Nail's testimony is somewhat inconsistent about the base price Elasko, Buffalo, paid. However, as mentioned above in detailing the factual record, the customs appraiser's report cures the inconsistency when it explains that up to June 15, 1961, Elasko, Buffalo, was buying at base Buffalo list prices, less 30 percent, and after that at Canadian home consumption base list prices, less 30 percent. Though not as clear as it might be, the record is consistent. Invoice unit purchase prices up to January 1961 were about 10 percent less than the list prices in exhibit 1–A. The unit purchase prices were subsequently increased about 10 percent and between January 1961 and June 15, 1961, the invoice unit purchase prices were the same as in pricelist exhibit 1–A. The invoice unit purchase prices after June 15, 1961, were the same as in pricelist exhibit 1–B. In each instance, there was allowed a distributor's 30 percent discount off list. The same 30 percent discount was read into the price at which identical merchandise was sold in the case of the two "odd" export transactions. The price of merchandise sold to a selected purchaser at wholesale must reflect its market value. Price in the home market is one criteria of the fair market value of merchandise. *United States* v. *Acme Steel Company, supra*. Short of a showing of unusual market conditions, the price for home consumption is certainly as objective as any measure can be of fair market value. The undisputed testimony is that the fair market value at which Elasko, Canada, sold to distributors in Canada was 30 percent off list. This being so, the same 30 percent off list to a selected distributor in the United States also represents a fair market value.

I find as facts:

1. That the merchandise of these appeals for reappraisement consists of plastic articles exported from Canada during the period September 1960 through December 1961.

2. That said merchandise was produced and exported by Elasko, Canada, and, at the time of exportation, there was no other Canadian producer of merchandise of the same class or kind.

3. That, at the time of exportation, Elasko, Canada, sold such merchandise in the ordinary course of trade for home consumption and for export to the United States.

4. That, at the time of exportation, Elasko, Canada, sold such merchandise in the ordinary course of trade for export to the United States to Elasko, Buffalo, N.Y., a selected distributor at wholesale without restrictions as to the disposition or use of the merchandise.

5. That, at the time of exportation, Elasko, Canada, sold such merchandise to Elasko, Buffalo, at prices which did not vary because of the quantity purchased.

6. That, at the time of exportation, Elasko, Canada, sold such merchandise for home consumption in Canada to furniture stores, department stores, and gift shops, at list prices and to distributors in Canada at 30 percent off list.

7. That, at the time of exportation and up to June 15, 1961, Elasko, Canada, sold such merchandise for export to the United States to Elasko, Buffalo, at list prices, United States currency, less 30 percent, as invoiced, and, thereafter, at list prices, Canadian currency, less 30 percent, as invoiced, except for those items described as display racks, exported between January 1961 and June 15, 1961, listed at $15 and invoiced at $10.

8. That said merchandise was appraised on the basis of constructed value, as defined in section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (T.D. 54165), at invoice units in Canadian currency, net, stated in the invoices to be the current prices for home consumption.

I conclude as a matter of law:

1. That the merchandise of these appeals for reappraisement was freely sold in the ordinary course of trade to Elasko, Buffalo, a selected distributor at wholesale, at a price which fairly reflected the market value of the merchandise.

2. That export value, as defined in section 402(b) of the Tariff Act of 1930, as amended, is the proper basis for determining value of the merchandise in these appeals to reappraisement.

3. That, at the time of exportation, as to that merchandise exported prior to June 15, 1961, and appraised in units of Canadian currency, net (except as to invoice items described as display racks

exported on and after January 1961 and before June 15, 1961), the export values which fairly reflect the market value are the invoice unit purchase prices, United States currency, less 30 percent.

4. That, at the time of exportation, as to that merchandise exported on and after June 15, 1961, and appraised in units of Canadian currency, net, the export values which fairly reflect the market value are the invoice unit purchase prices, Canadian currency, less 30 percent.

5. That, at the time of exportation, on and after January 1961 and before June 15, 1961, as to that merchandise described on the entry invoices as display racks, the export value which fairly reflects the market value is $15, United States currency, less 30 percent.

As to all other merchandise, these appeals for reappraisement are dismissed.

Judgment will enter accordingly.