(R.D. 11635)

## TANROSS SUPPLY CO., INC. v. UNITED STATES

Entry No. M–7453.

(Decided March 6, 1969)

*Cassel & Benjamin* (*Julian R. Benjamin* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Steven Sosnov*, trial attorney), for the defendant.

RAO, Chief Judge: The merchandise involved in this appeal for reappraisement consists of "7 x 35 ZCF Prismatic Binoculars" exported from Taiwan and entered at the port of Miami. The articles were entered at U.S. $7.23 per pair, and were appraised at $7.80 per pair, net packed.

The parties are in agreement that the merchandise is not on the Final List promulgated by the Secretary of the Treasury, 93 Treas.

Dec. 14, T.D. 54521, and that the correct basis of value is export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

At the trial, the official papers and several other documents were received in evidence and the testimony of two witnesses adduced.

Julian R. Benjamin, general counsel for the importer, Tanross Supply Co., Inc., testified that he had been in Taiwan on behalf of the importer in February and March of 1966. He stated that two documents, received in evidence as collective exhibit 1, were copies of purchase orders No. 20271 and No. 20269 from Tanross to Kuo Kuang Optical & Instrument Co., Ltd. They are dated March 10, 1965 and each includes 1000, 7 x 35 Zeiss Style Binoculars at $7.40 f.o.b. Keelung. Shipment was to be early October or September 1965. Mr. Benjamin testified that the orders had not been filled at the time of his visit to Taiwan and that they were discussed at a meeting at the factory at which there were present Mr. George Rosenfield, president of Tanross, Mr. Taiso Matsuo, president of Tasco, Japan, Inc., plaintiff's exporter in Japan, Mr. William Korte, Tasco engineer, and himself. Mr. Benjamin stated that the market value of these binoculars in Japan had dropped and that Tanross was able to purchase them at a lower price than it would have had to pay in March 1965. He learned that the agreement between Tanross and Kuo Kuang was that any market rise or fall between the time of the purchase order and the time of shipment would be reflected on the actual invoice, and that the price was to be 50 cents or 75 cents per item less than the freely offered price in Japan. As a result of the meeting, purchase order No. 20271 (the one involved herein) was changed to 500 binoculars at $7.23 per unit (collective exhibit 2). The merchandise was exported within 3 weeks, payment being made by two Letters of Credit, L/C No. 4130 and L/C No. 4169. In a letter to Joel R. Mish, import specialist, subsequent to the shipment, Mr. Benjamin stated that the original purchase order was for more money and that the original letter of credit was opened for more money. (Exhibit A.)

Another purchase order, No. 248, dated December 17, 1965, was received in evidence as exhibit B. It covers the same style binoculars at $7.80 per unit. Exhibit C, which Mr. Mish said he had received in a Tanross envelope, is a purchase order, the same as exhibit B, on which it is stated "Corrected P.O. No. 248". Next to the item covering the style binocular involved herein is written: "L/C 4169".

Mr. Benjamin testified that although it had been agreed when he was in Taiwan that the merchandise covered by exhibit C would also be shipped at $7.23, that had not been done. He explained:

However, after I left Japan I was advised by Lea Barnett, assistant to Mr. Rosenfield, that he had authorized the acceptance of the shipment of 1000 7 by 35 at $7.80. She tells me there was

pressure put on by the Taiwan manufacturer, that he wouldn't ship the 500 at $7.23 unless we would take the thousand at $7.80. They both left on the same date, which was March the 28th, 1966, and arrived on June 7, 1966 in the United States.

Now, part of the $7.80, the 1000 units, were paid for by LC 4169, which was the same LC that in part paid for the 500 at $7.23.

Mr. Benjamin stated that the merchandise was freely offered in Taiwan at $7.23 per unit at the date of exportation, except that pressure was applied on this particular item. He testified:

> It was freely offered to Tanross and to every other customer of Quo [sic] Kuang Optical. That is one of the questions we asked, Are you offering it to your other customers? The answer was yes. The next question was, Who else do they sell in the United States? They told us that they had purchase orders, and assured us they were offering it at the same price by exhibiting the invoices to us. Whether they ever shipped to anybody else I do not know.

According to the witness, these binoculars were also offered to Tanross by five manufacturers in Japan at either 50 cents or 75 cents more than $7.23, and Tanross purchased at $8.05 on March 11 and March 13, 1966.

On this record, plaintiff claims that it has established that the export value of these binoculars is $7.23 per pair. Export value, as defined in section 402(b) of the Tariff Act of 1930, as amended, is the price at which such or similar merchandise is freely sold, or in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade. Where an appraisement is contested, the burden rests upon plaintiff to establish that the action of the appraiser is erroneous and that the claimed value is the proper dutiable value. *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593; *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502.

The evidence presented here establishes at most that Tanross paid $7.23 per unit for the binoculars covered by the entry involved herein and that it paid $7.80 per unit for another shipment exported at the same time. These prices appear to have been arrived at as the result of bargaining or pressure by one side or the other. Purchase order No. 20269 was at $7.40 and there is no evidence to show when the merchandise covered thereby was actually shipped or what price was in fact paid for it. Evidence of sales at different prices or at prices arrived at by bargaining is far from establishing *the* price at which such merchandise was freely sold to all purchasers in accordance with the statute. *Aceto Chemical Co., Inc.* v. *United States*, 51 CCPA 121, C.A.D. 846; *United States* v. *North American Asbestos Corp.*, 48 CCPA 153, C.A.D. 783; *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129.

The only evidence that this merchandise was freely sold or offered for sale at $7.23 is Mr. Benjamin's testimony that the manufacturer so stated, which testimony was not supported by price lists, purchase orders, or invoices. He mentioned that invoices had been exhibited to him but added that he did not know whether Kuo Kuang shipped to anyone else. His testimony does not disclose evidentiary facts and does not prove that binoculars were freely sold or offered for sale in Taiwan, at the price claimed. *United States* v. *Baar & Beards, Inc.*, 46 CCPA 92, C.A.D. 705; *Kobe Import Co.* v. *United States, supra; Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495.

The statements as to sales and offers in Japan fail to show that the merchandise was freely sold or offered for sale there at any one price. In any event, sales made in Japan do not establish the price at which the merchandise was freely sold or offered for sale in Taiwan. Export value is the value in the country of exportation, not somewhere else. *Kobe Import Co.* v. *United States*, 43 CCPA 136, C.A.D. 620.

On the record presented, I find that plaintiff has failed to overcome the presumption of correctness attaching to the appraised value.

I find as facts:

(1) That the merchandise consisted of "7 x 35 CZF Prismatic Binoculars" exported from Taiwan and entered at the port of Miami.

(2) That the merchandise is not on the Final List promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

(3) That the merchandise was appraised on the basis of export value as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at $7.80 per pair, net packed.

(4) That the importer paid $7.23 per pair for this shipment but paid $7.80 per pair for another shipment exported at the same time.

(5) That the record does not establish that on or about the date of exportation such or similar merchandise was freely sold, or in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at the claimed price of $7.23 per pair.

I conclude as matters of law:

(1) That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for determining the value of the merchandise involved herein.

(2) That the export value of said merchandise is the appraised value.

Judgment will be entered accordingly.