(R.D. 11675)

JOSEPH A. PAREDES & Co., a/c ANDREW D. DARVAS CO. *v.*

UNITED STATES

Entry No. 60086, etc.

(Decided July 31, 1969)

*Glad & Tuttle* (*George R. Tuttle, Jr.*, of counsel) for the plantiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov*, trial attorney), for the defendant.

WILSON, Judge: Four appeals for reappraisement were consolidated for trial. The merchandise consists of plaster of Paris statues and bas reliefs which were manufactured and exported by W.H. Bossons (Sales) Limited, Cheshire, England. The merchandise was exported in R65/4900 on June 2, 1964; in R65/4917 on May 1, 1964; in R67/7722 on October 1, 1966; and in R67/7723 on August 15, 1966.

Appraisement was made on the *basis* of export value under section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, at the invoice unit prices, plus 25 percent, less 2½ percent cash discount, plus packing.

Plaintiff's counsel at the trial conceded that the *basis* of export value *supra* is correct, but contended that the invoice unit prices, less 2½ percent cash discount, plus packing, represented such export value. Plaintiff also contended that its claimed prices represent sales prices to two selected purchasers at wholesale who buy for resale otherwise than at retail at prices which fairly reflect the market value of the imported merchandise.

As the imported merchandise is not listed on the Final List of the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, such merchandise is subject to appraisement on the basis of export value as defined in the amended tariff act, *supra.*

The following statutes are considered:

Section 402(b), *supra*, reads as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time

of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(f) of the Tariff Act of 1930, as amended, reads:

    (f)  DEFINITIONS.—For the purposes of this section—

        (1)  The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

            (A)   to all purchasers at wholesale, or

            (B)   in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholsale.

        (2)  The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

        (3)  The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

The plaintiff offered the oral testimony of Andrew D. Darvas who testified that he is the owner of Andrew D. Darvas Co. which is in Berkeley, California, and now is and since 1953 has been in the business of importing all kinds of gift items, wood carvings, candles and wall decorations which he wholesales to retail outlets in the United States. Plaintiff also offered in evidence a Sardinian plaque, exhibit 1; a brochure dated January 1, 1968, depicting the exporter's line of wall figures, wall masks and wild life wall figures, exhibit 2; a letter from the exporter to the importer dated April 2, 1965, exhibit 3; and an affidavit by W. Ray Bossons sworn to on May 22, 1968, exhibit 4. Plaintiff also moved the official papers in evidence without being marked.

The defendant offered a plaster of Paris plaque which its counsel intimated was produced by another manufacturer in England, exhibit A. No further information concerning exhibit A was offered by the defendant. There is nothing to show the number of sales of exhibit A for home consumption or whether sales were freely offered or made to the United States, or what the quantities and prices were. Said exhibit A was received "for whatever it is worth". It contains an inscription *on the back* which was not called to the attention of the court or opposing counsel at the time of trial, reading, "Rajah/A Legend Product/made in England/* * *". No evidence was offered as to who wrote the inscription or where or when this writing was inscribed. This exhibit A is without evidentiary value, especially as Mr. Darvas testified that it was "far inferior" to the merchandise that he imported which is "much better".

Two primary issues are presented by the record herein, to wit: (1) whether the appraisements are separable, and (2) whether the sales prices to the importer herein are sales in the ordinary course of trade to a selected purchaser at wholesale which fairly reflect the market value of the merchandise.

With respect to the separability issue, the appraisements in the cases at bar added 25 percent to the invoiced unit prices. In a case where the appraiser considered a 5 percent "Buying Commission" as part of the appraised value, the appraisement was held to be separable. Plaintiff there contested only the inclusion of said commission. *United States* v. *Knit Wits (Wiley) et al.*, 62 Cust. Ct. 1008, A.R.D. 251, 296 F. Supp. 949 (1969), and cases cited. See also *Hub Floral Manufacturing Company* v. *United States*, 62 Cust. Ct. 979, A.R.D. 249, 296 F. Supp. 355 (1969) (appeal pending); *Park Avenue Imports* v. *United States*, 62 Cust. Ct. 1035, A.R.D. 255 (1969); *Shalom Baby Wear, Inc.* v. *United States*, 62 Cust. Ct. 856, R.D. 11641 (1969); *Bud Berman Sportswear* v. *United States*, 62 Cust. Ct. 901, R.D. 11657 (1969), and cases cited.

Accordingly, I am of the opinion that the instant appraisements are separable and that plaintiff is entitled to rely upon the presumption of correctness attaching to the appraiser's returns with respect to all elements of the appraisements except the contested 25 percent addition. *Park Avenue Imports* v. *United States, supra.* This, however, does not relieve the plaintiff from offering evidence to the effect that its claimed prices are in fact sales prices to a selected purchaser at wholesale where he bought for resale otherwise than at retail at prices which fairly reflected the market value of the imported merchandise.

With respect to the remaining issue, the record discloses that Mr. Darvas supervised the purchase of merchandise as well as the sales in

the United States; he purchased the merchandise under consideration and paid the prices shown on the invoices. He testified that exhibit 1 is described as "60 Sardinian" in R65/4917, entry 55464 of May 25, 1964, and that it is a mold of plaster of Paris and is hand painted; that there are larger heads and figures on the various invoices. He also testified that exhibit 2 is a current catalogue of all items that the exporter markets and which he imports. The items are all of the same class or kind and made of the same material. The brochure is dated January 1, 1968. He sells to gift shops, department, chain and hardware stores and to florists in the United States.

Mr. Darvas also testified that he started doing business with this exporter in 1963; that his area for sales was the 11 western states as well as Texas, Arkansas, Oklahoma, and Louisiana, that being the importer's exclusive territory by oral agreement with the supplier, which appears to be confirmed by the letter dated April 2, 1965, exhibit 3, which he follows in his sales practices. He said that Bossons was to his knowledge the only source of supply of this type of item. He tried to find other sources in England and in the European trade without success. He stated that his United States competitors did not sell similar items.

The witness further testified that he recognized the signature of Ray Bossons on the affidavit, exhibit 4. He said he had frequently seen said signature on correspondence with Mr. Bossons. He stated that the exhibit A, which forms a part of exhibit 4, is a price list dated January 1, 1967 from Bossons and that there was no change in prices "since I have been buying this product"; that the prices "never changed since I bought the first item". He said that he was in England and studied the prices and kept informed on them.

Schedule B, part of exhibit 4, is a list of sales from page 1 to and including page 34. It lists sales in Great Britain and sales for exportation to the United States during May and June 1964, and between September 1, 1966 and October 31, 1966, together with copies of actual invoices of such sales. The affiant in said exhibit 4 alleges that when a sale was made to a retail store in England, 25 percent was added to cover the British Purchase Tax. The said British Purchase Tax has been held to be a nondutiable item. *United States* v. *Alfred Dunhill of London, Inc.*, 32 CCPA 187, C.A.D. 305 (1945); *United States* v. *Wm. S. Pitcairn Corp.*, 33 CCPA 183, C.A.D. 334 (1946). Mr. Bossons' affidavit further states that the majority of sales in Great Britain were to wholesalers, who in turn sell to retailers at the retail price list prices, less a trade discount of 25 percent with a few sales at 27½ percent off; that the 25 percent discount is calculated on each sale and granted where quantities purchased by the wholesaler are *in excess of £12,000 per annum*, while others who buy less are granted 20 percent

discount off the retail home market price list. He further alleges that export sales to S.P. Skinner & Co. of New York, New York, and to Andrew D. Darvas Co. of Berkeley, California, have been made since September 1965.

At page 2 of exhibit 4, Mr. Bossons alleges that sales to S.P. Skinner & Co. "have been at a deduction of 20 percent from the final total of the negotiated [1] sales price. Sales to Andrew D. Darvas Co., have been based upon a unit discount price of 20%, *rounding off the individual figures to make it a more sensible price*." [Emphasis supplied.] A cursory examination of the photostatic copies of invoices attached to said affidavit, exhibit 4, discloses the following variations in discounts: of the sales to purchasers in Great Britain 102 were at 25 percent off list; 7 were at 27½ percent off list; 37 were at list *plus* 27½ percent; 1 was at 15 percent off and 1 was at 7½ percent off. Of the sales to the United States, 3 were to the importer Darvas which did *not* show a trade discount; 2 were to the importer Skinner at 20 percent off; and 1 was to Woodward and Lothrop of Washington, D.C., at 7½ percent trade discount.

Mr. Darvas further testified that on November 26, 1963 by letter, he and Bossons formalized the verbal agreement for territorial exclusivity and it was again referred to in exhibit 3 dated April 2, 1965. He stated that his firm and S.P. Skinner Co., Inc., of New York are the two appointed United States firms having exclusive territory selling rights for the sale of Bossons' products in the United States; that Skinner has the territory other than that prescribed for Darvas, which conformed to his verbal understanding in England. He stated that Alaska and Hawaii have not been exclusively assigned to either Darvas or Skinner by the exporter and both firms may make sales there.

There is no explanation as to the difference in discounts at which the merchandise was sold or offered for sale for home consumption as against the discount for sales made for export to the United States. This difference discloses sales at different prices for home consumption and for export to the United States. The record fails to disclose whether the sales prices to the United States' two selected purchasers are or are not fairly reflective of fair prices under the provisions of section 402(f) (1) (B), *supra*. In *Union Carbide Corporation* v. *United States*, 58 Cust. Ct. 821, A.R.D. 222 (1967), export selling prices were less than the cost of materials and fabrication for identical sponges

---

[1] In *Arthur J. Humphreys* v. *United States*, 57 Cust. Ct. 638, R.D. 11225 (1966), this court stated that "Because the price was 'negotiated', it cannot be accurately stated that the price finally arrived at, or any of the invoiced prices, 'fairly reflects the market value of the merchandise' under the terms laid down by the above statute." (Section 402(f) (1) (A), and 402(f) (1) (B).) See also *Tanross Supply Co., Inc.* v. *United States*, 62 Cust. Ct. 837, R.D. 11635 (1969) ; *Semon Bache & Co.* v. *United States*, 28 CCPA 166, 176, C.A.D. 140 (1940) ; *Harry Garbey* v. *United States*, 24 CCPA 48, 52, T.D. 48332 (1936), and *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 CCPA 105, C.A.D. 962 (1969).

sold for home consumption in Canada where "plant costs" for material and fabrication were "just over 30 cents". Cost figures for other elements allegedly influencing the home market price were not disclosed. Here there is also no such or similar disclosure. In the *Union Carbide Corporation* case, *supra*, the court held the evidence was insufficient to show that the claimed export price fairly reflected the market value of the imported sponges.

Though Darvas and Skinner were limited to certain nonoverlapping sales territories in continental United States, such sales by them were not made in derogation of the permissive exceptions stated in section 402(f)(1)(B) *supra*. Such sales were in the ordinary course of trade of the exporter under the principle stated in *Chr. Bjelland & Co., Inc.* v. *United States*, 52 CCPA 38, C.A.D. 855 (1965), and *United States* v. *Lockwood & Freidin*, 61 Cust. Ct. 573, A.R.D. 241 (1968). Nevertheless, it was plaintiff's burden to establish that its claimed values fairly reflected the market value of the imported merchandise. The variances in price, and reasons therefore, together with "bargaining" or "negotiating" as stated in the affidavit, exhibit 4, do not aid in establishing a fairly reflected market value for the imported merchandise. Neither such variations nor "bargaining" practices were present in *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841 (1964), and *C.J. Tower & Sons of Niagara, Inc., et al.* v. *United States*, 59 Cust. Ct. 681, R.D. 11367 (1967), or *United States* v. *Lockwood & Freidin*, *supra*, cases relied upon by plaintiff.

On the record herein, the court finds as facts:

1. That the imported merchandise consists of plaster of Paris statues and bas reliefs manufactured and exported by W.H. Bossons (Sales) Limited of Cheshire, England, in R65/4900 on June 2, 1964; in R65/4917 on May 1, 1964; in R67/7722 on October 1, 1966; and in R67/7723 on August 15, 1966.

2. That the merchandise does not appear on the final list published by the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521.

3. Appraisement was made on the *basis* of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, which *basis* of appraisement is not disputed by the plaintiff.

4. Appraisement was made at the invoice unit prices, plus 25 percent, less 2½ percent cash discount, plus packing. The plaintiff contends for the invoice unit prices, less 2½ percent cash discount, plus packing.

5. The merchandise was sold by the exporter at the time of exportation to the United States only to plaintiff and to S.P. Skinner & Co. of New York, New York, each of said importers having exclusive

nonoverlapping territorial sales rights in continental United States, with each being permitted to sell in Alaska and Hawaii.

6. Plaintiff claims that the appraisements are separable and that its claimed prices fairly reflect the market value of the imported merchandise.

7. The majority of sales of the exporter in Great Britain were to wholesalers less a discount of 25 percent off the retail price list, with a few sales at 27½ percent off, the former being calculated on each sale where quantities purchased are in excess of £12,000 per annum, while others purchasing less are granted 20 percent discount.

8. Sales to Skinner, *supra*, "have been at a deduction of 20 percent from the final total of the negotiated sales price. Sales to Andrew D. Darvas Co., have been based upon a unit discount price of 20%, rounding off the individual figures to make it a more sensible price." There is no explanation for the differences in discounts and therefore in prices.

As conclusions of law on the record herein, the court finds:

1. The imported merchandise is subject to duty on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

2. The appraisements are separable and plaintiff may rely upon the presumption of correctness attaching to the appraiser's return with respect to all elements of the appraisements except the contested 25 percent addition.

3. Plaintiff nevertheless had the burden of establishing that its claimed prices are in fact sales prices to a selected purchaser at wholesale who buys for resale otherwise than at retail, at prices which fairly reflect the market value of the imported merchandise. This it has failed to prove by any probative evidence.

4. The evidence does not overcome the presumptively correct appraised values and they remain in full force and effect.

Judgment will be entered accordingly.