UNITED STATES *v.* NORTH AMERICAN ASBESTOS CORP. (No. 5051)[1]

United States Court of Customs and Patent Appeals, August 4, 1961

*George S. Leonard,* Acting Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Samuel D. Spector,* trial attorney, of counsel) for the United States.

*Sharretts, Paley & Carter, Eugene F. Blauvelt* (*Howard Clare Carter* and *W. R. Johnson,* of counsel) for appellee.

---

[1] C.A.D. 783.

Before Worley, Chief Judge, and Rich, Martin, and Smith, Associate Judges, and Judge William H. Kirkpatrick.[2]

Rich, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, Appellate Term (A.R.D. 123), affirming the judgment of a single judge sitting in reappraisement. The imported merchandise is blue asbestos yarn exported from England on or about September 6, 1957 and appraised at 6 shillings, 5½ pence per pound net, plus cost of packing. The importer claims the proper valuation is 5 shillings, 2½ pence per pound plus packing.

It is agreed that the proper basis of appraisement is foreign value as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.[3]

It has been stipulated that *if there is* a foreign value for merchandise *such* as that here under consideration, then that value is the appraised value, 6 shillings, 5½ pence per pound, and that if there is *no* foreign value for *such* merchandise, then the value of *similar* merchandise, 5 shillings, 2½ pence per pound, will be the basis of the appraisement. The collector appraised the merchandise on the basis of *such* merchandise. The importer contends that the appraisal should be based upon the value of *similar* merchandise under the stipulation.

It should be borne in mind that this stipulation, as will be evident, presents the case to us with a single extraordinarily simple issue: *At the time of exportation was there or was there not a foreign value for* "*such*" *merchandise?* If there was not, then, by stipulation, the 5 shilling, 2½ pence per pound agreed value of "similar" merchandise applies. The case, therefore, does not involve any attempt to prove affirmatively either value or any of the other elements of section 402(c), such as usual wholesale quantity and the like. All the importer has to prove is that there was no one price at which such merchandise was freely offered for sale in England in usual wholesale quantities to all purchasers. As the single judge phrased it,

It is apparent from the foregoing [stipulation] that the issue has been narrowed to the question of whether a foreign value for *such* merchandise existed within the meaning of section 402(c) * * *.

---

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

[3] (c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which *such* or similar merchandise *is freely offered for sale for home consumption to all purchasers* in the principal markets of the country from which exported, *in the usual wholesale quantities* and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. [Emphasis ours.]

His holding on the issue was:

I am of the opinion that the evidence establishes that there never was any single price at which blue asbestos yarn manufactured and sold by Cape Asbestos was freely offered for sale to all who wished to buy such merchandise.

In unanimously affirming, the three-judge Appellate Term said:

The *value claimed* by appellee in the instant case has been *established by stipulation* of the parties, and all that it is sought to prove here was that the appraiser's action in finding a foreign value for "such" merchandise was *erroneous for the reason that prices* at which it was sold or offered for sale *were not uniform.* Stated otherwise, appellee was merely endeavoring to *negate* the facts, inherent in the appraiser's return of value, that such merchandise was freely offered for sale in the usual wholesale quantities and in the ordinary course of trade *at prices which were the same for all.* That the quantum of proof required to controvert a presumed state of facts is less than that needed to affirmatively establish such facts in the first instance seems clear. [Emphasis ours.]

■ This being a reappraisement case, the only question before us is whether, as a matter of law, there is any "substantial evidence" to support the judgment below. It is not our province to weigh the evidence. *Kobe Import Co.* v. *United States,* 42 CCPA 194, 196, C.A.D. 593, *M.J. Corbett & Co.* v. *United States,* 20 CCPA 178, 180, T.D. 45965, *United States* v. *Malhame & Co.,* 19 CCPA 164, 170, T.D. 45276, *United States* v. *Vietor & Achelis,* 16 Ct. Cust. Appls. 122, 124, T.D. 42767, *United States* v. *Meadows Wye & Co., Inc.,* 15 Ct. Cust. Appls. 451, 454, T.D. 42643, *United States* v. *Johnson Co.,* 9 Ct. Cust. Appls. 258, 270, T.D. 38215.

The case was submitted for decision on the stipulation and importer's exhibit 1 which comprises a number of price lists attached to an affidavit by Albert George Grant, the "General Commercial Manager" of The Cape Asbestos Company, manufacturer and exporter of the merchandise at bar.

The pertinent portions of the Grant affidavit, wherein is contained all of the evidence, including the price lists which are a part thereof, read as follows:

By reason of my experience, as explained above, I am also familiar will (sic) all sales of my company's products in England for consumption in England. My company does not publish or circulate any price list showing the prices at which these products are offered for sale or sold. We have prepared price lists for our own use, but these price lists are never circulated in the trade or shown to prospective purchasers. These price lists are not, and are not intended to be, offers to sell any of the merchandise at the prices listed therein. I attach hereto copies of our private price lists which were effective April 5, 1954, January 21, 1955, February 27, 1956 and March 24, 1958.

. From 1st January, 1957 to date, Blue asbestos yarn has been sold in England at different prices to two classes of purchasers. The first class of purchasers are Henry Crossley & Company Limited and Beldam Asbestos Company Limited, both of which companies manufacture Blue asbestos yarn into various kinds of Blue

asbestos packing. Blue asbestos yarn was offered and sold throughout this period to Henry Crossley & Company Limited at the prices shown on the price list and to the Beldam Asbestos Company Limited at the same price less approximately 19 per cent. This discount is not a quantity discount and applies to any purchases made by the Beldam Asbestos Company Limited. During this period we have never offered Blue asbestos yarn for sale to other manufacturers in England. To the best of my recollection and belief we have never refused to sell the material to other manufacturers in England.

The second class of purchasers are merchants and small consumers who, to my own certain personal knowledge, use Blue asbestos yarn in the condition in which we sell it for maintenance purposes and not for further manufacture. We try to discourage sales to merchants and small consumers by charging them a price for the yarn that is approximately equal to the price of cloth made from the same count (or cut) of yarn. This policy ensures that the purchasers will not use the yarn for further manufacturing to produce a product that will compete with our own manufactures. The prices paid by these merchants and small consumers are at least equal to the prices shown on our private price list, the exact amount in excess thereof being determined by the bargaining ability of the purchaser. To the best of my knowledge and belief there has never been a case where merchants and small consumers paid less than the amount shown on our private price lists and there have been many many cases where they paid amounts in excess of that shown. Since 1st January, 1957, the Beldam Asbestos Company Limited have always received a discount from the prices shown in our price list. There was never, at any time, one single price at which merchandise was freely offered and sold to anyone who wished to purchase it.

 Affidavit evidence in this type of proceeding is acceptable evidence. Section 501, Tariff Act of 1930. The right to introduce evidence herein by affidavit cannot be questioned. *Kobe Import* case, supra, at page 199.

The argument invoked by appellant here is the argument it made in vain below, thus described by the Appellate Term:

Citing the cases of *Brooks Paper Co.* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495; *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593; *United States* v. *Fisher Scientific Co.*, 44 C.C.P.A. (Customs) 122, C.A.D. 648; and *United States* v. *Baar & Beards, Inc.*, 46 C.C.P.A. (Customs) 91, C.A.D. 705, counsel for appellant contends that plaintiff's collective exhibit 1 contains statements of the witness which are mere conclusions of ultimate issuable facts, lacking in probative value. Appellant challenges the entire document as devoid of evidentiary facts * * *.

The single judge said:

I have examined the affidavit carefully in the light of the criticisms made, and I find that the statements made in the affidavit * * * are statements of evidentiary facts made by an affiant whose competency to make the statements had been established, and that they are sufficient, together with the stipulated facts, to overcome the statutory presumption attending the value found by the appraiser.

The Appellate Term said it found no error in this conclusion, adding,

We are not unmindful of the precepts of the *Brooks*, *Kobe*, *Fisher*, and *Baar & Beards* cases, *supra*, concerning the necessity of careful distinction between

evidentiary facts and ultimate issuable facts and have sought to preserve them here. Under the circumstances which prevail in the case before us, however, we do not characterize the statements of affiant as mere conclusions unsupported by evidentiary facts. * * *

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Accordingly, we are of opinion that the court below properly regarded the statements of Grant in plaintiff's collective exhibit 1 as having evidentiary value.

If these views as to the distinction between ultimate and evidentiary facts and the categorizing of the affidavit as including evidence in the latter category are correct, then there is substantial evidence to support the judgment below and it must be affirmed. We repeat that it is not for us to weigh the evidence as to its sufficiency in this type of proceeding and we would be reluctant to reverse without strong reason.

■ The rule as this court stated it in the *Brooks* case, which the other cases relied on by appellant but copy, is:

The Supreme Court has defined "substantial evidence" as evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred. Substantial evidence, said the Court further, is such relevant evidence as a reasonable mind might accept to support a conclusion, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. * * * [Authority cited.]

Under this test of substantial evidence we think it clear that *a mere declaration of an essential ultimate fact in issue is not substantial evidence.* [Emphasis ours.]

A declaration of the ultimate fact in issue here would be: Cape Asbestos Company's blue asbestos yarn is not freely offered for sale in England, in wholesale quantities, to all purchasers at any uniform price. While the affidavit concludes with what is, in effect, such a statement, the sufficiency of the affidavit is not to be judged on that final statement alone. Mr. Grant tells us, in addition, about a number of *facts* concerning the sale of blue asbestos yarn, that it is sold to the Crossley and Beldam companies and at two different prices, an unpublished list price to one and a price 19% less than that to the other, that others can buy it only at a still different and higher price which is negotiated in each instance by bargaining. These are not mere conclusions. They are business facts which, if sent to a jury, would, we think, justify a verdict that Cape Asbestos Company does *not* freely offer the merchandise at bar for sale at any uniform wholesale price. It was not necessary, in this case, to prove anything else.

Under the rule of the *Brooks* case, the Grant affidavit provided "substantial" evidence to support the lower court's judgment which must, therefore, be *affirmed.*

MARTIN, Judge, dissenting, with whom KIRKPATRICK, Judge, joins.

I dissent from the majority opinion for the following reasons:

In view of the stipulation, there is but one issue for us to resolve in this case: Is there adequate evidence to overcome the presumption of the correctness of the appraiser's valuation? In order to accomplish this result, it must be established by evidence that there was no market value or price at the time of exportation of the merchandise at bar to the United States at which *such* merchandise had been freely offered for sale in the usual wholesale quantities for home consumption to all purchasers in the principal markets of England. The conclusion of this ultimate fact will determine the issue presented to us here. Such a conclusion can be reached only by consideration of evidentiary facts. Therefore, it finally resolves into the question of whether the statements that Grant made in his affidavit and the price lists (Exhibit 1) can be so considered and, if so, whether the statements have such definiteness that they establish the facts which are determinative of the ultimate issue.

There are many statements of fact in the affidavit which can be considered evidentiary but which are so ambiguous that the *significant* facts cannot be determined with any degree of definiteness. Therefore, I do not believe that those statements add up to the substantial evidence required to determine the ultimate fact, *viz*, that there was no market value or price at which such merchandise had been freely offered for sale. The burden is on the importer to establish that fact if it is to prevail.

The majority mentions statements concerning the sales to the Crossley and Beldam companies which sales are not significant in determining the issues here. Likewise there are many other statements in the affidavit which are inconsequential and have no bearing on the matter. The most significant and important statement reads: "To the best of my knowledge and belief there has never been a case where merchants and small consumers paid less than the amount shown on our private lists and there have been many many cases where they paid amounts in excess of that shown." I believe this statement to be so indefinite and open to so many interpretations that it cannot be considered substantial evidence.

Let us analyze this statement. Merchants usually buy goods for resale. Therefore, unless otherwise indicated, it could be assumed that this group purchases in "wholesale quantities." It is stated that the merchants never paid less than the "amount shown on our private price lists." The records of the company might show that these private price listings could very well be "the market * * * price * * * at which *such* * * * merchandise is freely offered for sale * * * in the usual wholesale quantities and in the ordinary course of trade * * *." [Emphasis ours.] There is nothing before us from

which we can draw any definite conclusions as to what the situation really was at the time of exportation. The statement that "there have been many many cases where they paid amounts in excess of that shown" does not help matters at all. "Many many cases" could be a very negligible percentage of the total sales to the merchants and, therefore, would not preclude the list price from being the price at which *such* merchandise is freely offered for sale, as the records could show that during the time of exportation of the merchandise, the great percentage of sales to these merchants were made at the same prices as appear on the price lists. Also, there is no statement as to when the many sales at prices exceeding the price list were made. These sales could have been made long before or long after the exportation of the merchandise, and the statute provides that the time of exportation is the price-determining period.

Although Grant states that his company tries "to discourage sales to merchants * * * by charging them a price for the yarn that is approximately equal to the price of the cloth," whatever that price may be, there is nothing in the affidavit to indicate that the yarn is not freely offered for sale to the merchants at *that price*. For all we know, the prices in the price list may be approximately equal to the price of the cloth.

Grant's statement, "There was never, at any time, one single price at which merchandise was freely offered and sold to anyone who wished to purchase it.", is a conclusion of the ultimate fact which is the paramount issue in this case, which must be determined by evidentiary facts, and cannot be established by a mere statement containing only the conclusion itself. Therefore, that statement cannot be considered substantial evidence to prove anything.

This court should arrive at conclusions of ultimate facts only through evidentiary facts which are clear, concise and complete. Since there are no unambiguous statements which could establish such evidentiary facts from which the court could conclude that there was no market value or price at which *such* merchandise had been freely offered for sale, I do not think that there is substantial evidence which successfully rebuts the presumption of the correctness of the appraiser's valuation. Therefore I would reverse the judgment of the Customs Court.