(R.D. 11683)

BUD BERMAN SPORTSWEAR, INC. *v.* UNITED STATES

Entry No. 1086270.

(Decided November 28, 1969)

*Barnes, Richardson & Colburn* (*Norman C. Schwartz* of counsel) for the plaintiff.

*William D. Ruckelshau,* Assistant Attorney General (*Herbert P. Larsen,* trial attorney), for the defendant.

RAO, Chief Judge: The merchandise involved in this appeal for reappraisement consists of men's cotton dress shirts manufactured and sold by Nippon Iryo Co., Ltd., of Nagoya, Japan (hereinafter called the manufacturer) and imported by Bud Berman Sportswear, Inc. of New York (hereinafter called Bud Berman). It was entered at the unit invoice ex-factory prices and was appraised at unit prices which were 30 cents higher.

This case has been submitted on an agreed statement of facts and two exhibits, one being an affidavit of Shoji Yamada, manager of the 3rd Section of the Trade Department of the manufacturer, with attached documents (exhibit 1), and the other being a report of Regional Customs Representative John A. Dresser, also with attached documents (exhibit A).

According to the agreed statement of facts, Mr. Harry Fichtenbaum, formerly a line examiner of merchandise at the port of New York, advisorily appraised this merchandise at the red ink figures indicated on the invoice. His advisory appraisements were based on export value, as defined in section 402(b) of the Tariff Act of 1930 as amended by the Customs Simplification Act of 1956, of "such" merchandise, as defined in section 402(f)(4)(A) of said tariff act, as amended. Neither party challenges the said basis of appraisement. The advisory appraisements were adopted by the assistant appraiser and became the official appraised values of the merchandise.

It was further agreed:

> That in arriving at his advisory values Mr. Fichtenbaum determined that such merchandise was freely sold or offered for sale for exportation to the United States only at a price which included, as an integral part thereof, delivery by the seller F.O.D. ship, and he therefore added to the "ex-factory" prices invoiced in the instant entry an amount which he determined in each instance to be the pro-rata share of the invoiced "Handling Charges Paid For Your Behalf," equalling 30¢ per dozen, when rounded off to the nearest cent.

The parties also stipulated that the sole issue is whether, at the time of exportation, such or similar merchandise was freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States on an ex-factory basis.

In support of the affirmative position, plaintiff relies on the following statements in Mr. Yamada's affidavit:

> 2) * * * In negotiating sales of garments to customers both domestic and export, it is now and always has been the policy of the company to negotiate prices on the basis of ex-factory. At all

times, any customer who so desires was free to take delivery at the factory, and to utilize his own truckers, warehousemen and freight forwarders for the onward shipment of the merchandise; and in such case, payment of the agreed ex-factory price would complete the transaction.

3) At the request of the customer, the company has been and is now willing to arrange for transportation to the place designated by the customer and to prepay the delivery and handling charges. In such cases, we would either obtain reimbursement from the customer for the actual charges, or we would charge an agreed amount as reimbursement.

It further appears from Mr. Yamada's affidavit and from the initial agreement between Bud Berman and the manufacturer, dated December 25, 1961, that prices were originally specified f.o.b. Nagoya and were made up of the cost of the material plus a manufacturing charge, which included an estimated 25 cents per dozen for handling and delivery from factory to vessel. It was subsequently agreed that payment was to be made on an ex-factory basis and that the ex-factory prices would be determined by taking the f.o.b. prices and subtracting 25 cents per dozen. The manufacturing charges were changed from time to time by supplemental agreements and the price differential between ex-factory and f.o.b. was increased to 30 cents in an agreement dated December 7, 1964 and decreased again to 25 cents in an agreement dated July 4, 1965. The latter agreement states:

If the Buyer elects to take delivery at the factory and assume responsibility and cost for transportation from the factory to the vessel, the factory prices will be reduced accordingly. It is estimated that such transportation costs are ¢25.—per dozen.

Mr. Yamada stated in his affidavit that the invoice involved herein included, in addition to the ex-factory prices, the handling charges from factory to vessel prepaid for the account of Bud Berman. He added:

* * * Because of the passage of time, the actual documents reflecting invoicing from and payment to, the various local insurance, transport, and storage companies, are no longer available. I hereby affirm, however, that the actual amounts of the said handling charges on this shipment were accurately listed on the said invoice No. BUD–66–13 under the heading "Handling Charges Paid For Your Behalf", since it was our regular practice at the time of preparing the invoice, to transfer to the invoice the exact amounts as billed by the local insurance, transport and storage companies.

The report of Customs Representative Dresser indicates that from his examination of the sales ledger of the manufacturer, Bud Berman paid the f.o.b. Nagoya total of the invoices. He states that the said

f.o.b. Nagoya total included various charges for delivery from factory to ship which were calculated for invoicing purposes at 25 or 30 cents per dozen. The report also states that the manufacturer employed a customs broker, Oguribashi Unyu, to handle the merchandise from go-down to ship for which a flat rate was charged.

The basic agreement between Bud Berman and the manufacturer, dated December 25, 1961, also provided:

> 6. In consideration of the volume of business being placed by the Buyers with the Sellers, the Sellers agree that they will not sell either directly or indirectly any dress shirts to any purchaser for importation into the United States Other than the Buyers so long as the Buyers continue to offer order to the Sellers at an annual rate of 60,000 dozen or more. * * *

This provision was amended by later agreements to permit the sale of synthetic dress shirts only to others than Bud Berman with the consent of Bud Berman.

This case again presents the question of the quantum of proof required where the appraiser calculates value of adding inland and handling charges to an invoiced ex-factory price. Such an appraisement is separable, and plaintiff may challenge the propriety of including the charges while relying on the presumption of correctness of the other elements of value. *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371 (1947); *United States* v. *Schroeder & Tremayne, Inc., et al.*, 41 CCPA 243, C.A.D. 558 (1954); *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71 (1957); *United States* v. *Knit Wits (Wiley) et al.*, 62 Cust. Ct. 1008, A.R.D. 251, 296 F. Supp. 949 (1969). In view of this doctrine, it has been held in such cases that plaintiff need show only that the merchandise was in fact sold or offered for sale ex-factory, it being presumed that the ex-factory prices used by the appraiser were those offered to all. *United States* v. *Chadwick-Miller Importers, Inc., et al.*, 54 CCPA 93, C.A.D. 914 (1967); *United States* v. *Bud Berman Sportswear, Inc.*, 55 CCPA 28, C.A.D. 929 (1967); *Pan American Import Corp. et al.* v. *United States*, 61 Cust. Ct. 619, A.R.D. 248 (appeal pending), 292 F. Supp. 718 (1968).

In the *Chadwick-Miller* case, the court pointed out (p. 95):

> The statute requires an appraisement be made at the price at which such merchandise is freely sold or offered for sale in the principal markets of the country of exportation. In the present case it is apparent that the appraiser concluded that the principal market was the port of shipment. He must necessarily have found that the merchandise was freely offered for sale at the appraised prices at that port. The appellees do not argue that the appraised f.o.b. prices are inaccurate but contend that they are not the proper export values since the evidence clearly shows that the merchandise was available to all purchasers on an ex-factory basis. *Kurt Orban*

*Co., Inc.* v. *United States*, 52 CCPA 20, C.A.D. 851. Although there is no evidence to show that other purchasers could have bought the merchandise at the same ex-factory prices paid by them, there need not have been such evidence, in view of the separability rule. *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371.

In *United States* v. *Bud Berman Sportswear, Inc., supra,* it was established that the manufacturer offered to sell the merchandise at either f.o.b. or ex-factory prices. In sustaining the decision below, holding that the inland charges had been improperly added, the court stated (pp. 30-31):

> We do understand that there is no necessary relationship between the ex-factory price which is here a component of the appraised value and ex-factory prices which may be offered to others by Smart Shirts. Neither, of course, is there any necessary relationship between appraised value and the export value under the statute. However, the statute prescribes a presumptive equivalence in the latter situation. This is not a matter of logic but of law. We do not think that [1] the Customs Court necessarily acted improperly in its derivation here of the subsidiary presumption that the ex-factory price used by the appraiser is the one offered to all if, in fact, *an* ex-factory price is offered to all.

> The single judge, as we understand his opinion, reasoned that [2] the legal effect of the appraisement and the appraiser's testimony was to establish the f.o.b. transaction, which apparently took place, as typical. He, therefore, limited the proof required of appellee to that necessary to negate the presumption that the imposition of inland charges was typical. We cannot say that his attempt thus to fashion a framework of convenience for the analysis of disputed appraisements has too insubstantial a basis to stand. The value of this kind of presumption is, after all, an intensely practical affair and one which the trial court is especially competent to judge.

In the instant case it has been stipulated that the appraiser added to the invoiced ex-factory prices the pro rata share of the handling charges. Thus, the appraisement is separable. The question is whether the merchandise was in fact sold or offered for sale on an ex-factory basis. According to the affidavit of Shoji Yamada, it was the policy of the manufacturer to negotiate on an ex-factory basis and any customer who desired was free to take delivery at the factory and pay the agreed ex-factory price. The agreements between the manufacturer and Bud Berman in effect at the time of exportation establish that Bud Berman was the exclusive purchaser of cotton dress shirts and that it was free to take delivery at the factory and pay the agreed ex-factory price. The evidence indicates that at the time of exportation, Bud Berman purchased at ex-factory prices and that the manufacturer

arranged for delivering the merchandise on board ship, and paid the charges therefor to insurance, transportation, and storage companies on behalf of Bud Berman.

The term "freely sold or, in the absence of sales, offered for sale" is defined in section 402(f)(1) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, to mean sold, or in the absence of sales, offered to (A) all purchasers at wholesale, or (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects market value. Here, since Bud Berman was the selected purchaser of cotton dress shirts, the appraiser must necessarily have found that the f.o.b. sales to it fairly reflected market value. The only question is whether the charges should have been included.

While the appraiser considered the charges an integral part of the appraised value, it is obvious that they are not part of the price of the merchandise *per se*. Export value, as defined in section 402(b) of the Tariff Act of 1930, as amended, is the price at which the merchandise is freely sold or offered for sale, plus the cost of packing and charges incidental to making it ready for shipment. Other charges, such as the cost of inland freight, storage, or insurance, are not ordinarily part of export value. *United States* v. *Lyons*, 13 Ct. Cust Appls. 639, T.D. 41484 (1926). It is only where no sales or offers were ever made on an ex-factory basis and the merchandise was available solely at an f.o.b. price that export value has been held to include the additional charges. *United States* v. *Paul A. Straub & Co., Inc.*, 41 CCPA 209, C.A.D. 553 (1954), cert. den. 348 U.S. 823 (1954) ; *Albert Mottola, etc.* v. *United States*, 46 CCPA 17, C.A.D. 689 (1958).

The evidence presented establishes that the merchandise was freely sold or offered for sale within the meaning of the statute to Bud Berman, as the selected purchaser, at ex-factory prices. Such evidence is sufficient to overcome the presumption in the appraisement that the merchandise was sold only at a price which included the charges. *Pan American Import Corp. et al.* v. *United States, supra*. Therefore the charges for handling added by the appraiser are not properly part of export value.

On the record presented, I find as facts:

1. That the merchandise involved herein consists of men's dress shirts manufactured and sold by Nippon Iryo Co., Ltd. of Nagoya, Japan and imported by Bud Berman Sportswear, Inc. of New York, N.Y.

2. That the merchandise was appraised on the basis of export value as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. That neither party challenges the said basis of appraisement.

3. That the merchandise was invoiced and entered at ex-factory prices. That the invoice had listed thereon certain "Handling charges paid for your behalf."

4. That the merchandise was appraised at f.o.b. port of exportation prices, expressed in terms of the invoiced unit prices, plus a pro rata share of the handling charges, determined by the appraiser to be 30 cents per dozen.

5. That pursuant to agreements between the manufacturer and Bud Berman Sportswear, Inc., in effect at the time of exportation, Bud Berman was the exclusive purchaser of cotton dress shirts and was free to take delivery at the factory and pay the agreed ex-factory prices.

6. That the agreement of December 25, 1961, specified f.o.b. prices made up of the cost of the material plus a manufacturing charge, which included an estimated 25 cents per dozen for handling and delivery from factory to vessel; that it was subsequently agreed that payment be made on an ex-factory basis and that the ex-factory prices would be determined by taking the f.o.b. prices and subtracting 25 or 30 cents per dozen.

7. That at the time of exportation Bud Berman purchased at ex-factory prices and the manufacturer arranged for delivery of the merchandise on board ship, and paid the charges therefor to insurance, transportation, and storage companies on behalf of Bud Berman.

I conclude as matters of law:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise involved herein.

2. That Bud Berman was the selected purchaser of the merchandise within the meaning of section 402(f)(1)(B) of said tariff act, as amended.

3. That in making his appraisement, the appraiser found that the f.o.b. sales to Bud Berman fairly reflected market value.

4. That in view of the stipulation that the appraiser calculated the f.o.b. price by adding to the unit invoice ex-factory prices the pro rata share of the invoiced handling charge, the appraisement is deemed to be separable and the invoice unit prices are clothed with a presumption of correctness.

5. That the merchandise was sold, or in the absence of sales, freely offered for sale within the meaning of section 402(f)(1) of the Tariff Act of 1930, as amended, on an ex-factory basis.

6. That the invoice unit ex-factory prices, without the handling charges, represent the export values of each of the items of merchandise involved herein.

Judgment will be entered accordingly.