60 CCPA
**BUD BERMAN SPORTSWEAR, INC.,**
**Appellant,**

v.

**The UNITED STATES, Appellee.**
**Customs Appeal No. 5470.**

United States Court of Customs and Patent Appeals.
Dec. 7, 1972.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellant; Hadley S. King, New York City, of counsel.

E. Grey Lewis, Acting Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Herbert P. Larsen, New York City, for the United States.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

RICH, Judge.

This appeal is from the decision and judgment of the United States Customs Court, Third Division, Appellate Term, 66 Cust.Ct. 628, A.R.D. 287 (1971), reversing the judgment of a single judge sitting in reappraisement, 63 Cust.Ct. 605, R.D. 11683 (1969). We affirm.

The goods were men's cotton dress shirts exported from Japan in 1966.

The case was submitted on a stipulation and two exhibits, 1 and A.

The question is the "export value" of the merchandise under section 402(b) of the Tariff Act of 1930, 46 Stat. 708, as amended by the Customs Simplification Act of 1956, 70 Stat. 943, which provides:

> (b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(f) of the Tariff Act of 1930, 46 Stat. 708, as amended by the Customs Simplification Act of 1956, 70 Stat. 944, provides:

> (f) DEFINITIONS.—For the purposes of this section—
>
> (1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
>
> (A) to all purchasers at wholesale, or
>
> (B) in the ordinary course of trade to one or more selected pur-

chasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

As stipulated, the "export value" was arrived at by the line examiner, Mr. Fichtenbaum, as follows:

(3) That in arriving at his advisory values, Mr. Fichtenbaum determined that such merchandise was freely sold or offered for sale or exportation to the United States only at a price which included, as an integral part thereof, delivery by the seller F.O.B. ship, and he therefore added to the "ex-factory" prices invoiced in the instant entry an amount which he determined in each instance to the pro-rata share of the invoiced "Handling Charges Paid For Your Behalf," equalling 30c per dozen, when rounded off to the nearest cent.

The issue before the Customs Court was the propriety of the addition of the "Handling Charges" to the ex-factory price because the examiner determined that the price at which the merchandise was freely sold or offered for sale for exportation to the United States included delivery f.o.b. ship. The importer asserts that the "export value" should be the "ex-factory" price alone, without the addition of such "Handling Charges." The correctness of the amount of the Handling Charges, 30 cents per dozen, added by the examiner is not disputed, only the propriety of adding it.

Paragraph (5) of the stipulation, reads:

(5) That the sole issue herein is whether, at the time of exportation to the United States, such or similar merchandise was freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States on an ex-factory basis.

The Customs Court was convinced, among other things:

\* \* \* that appellee has failed to overcome the presumption of correctness attaching to the appraiser's finding that the transaction at bar was made on an f.o.b. basis which included the "handling" charges; that the contracts were in fact geared to an f.o.b. selling price; that the "options" referred to in the contracts, expressed in terms of f.o.b. prices less 25 or 30 cents and conditioned upon the buyer's willingness to take delivery at the factory and assume responsibility for placing the merchandise on board the vessel, were never accepted; and that the change in the invoicing to an "ex-factory" basis did not reflect a change in the manner of doing business, but was a transparent attempt to disguise the true nature of the transaction.

■ The issue here is whether the importer-appellant sustained his two-fold burden of establishing that the line examiner's valuation was erroneous and that the basis of dutiable value should be the ex-factory price.

■ This being a reappraisement case, the only question before us is whether, as a matter of law, there is any "substantial evidence" to support the judgment below. It is not our province to weigh the evidence. United States v. Acme Steel Co., 51 CCPA 81, 84, C.A.D. 841; United States v. North American Asbestos Corp., 48 CCPA 153, 155, C.A.D. 783; Kobe Import Co. v. United States, 42 CCPA 194, 196, C.A.D. 593; M. J. Corbett & Co. v. United States, 20 CCPA 178, 180, T.D. 45965; United States v. Malhame & Co., 19 CCPA 164, 170, T.D. 45276; United States v. Vietor & Achelis, 16 Ct.Cust.Appls. 122, 124, T.D. 42767; United States v. Meadows Wye & Co., Inc., 15 Ct.Cust. Appls. 451, 454, T.D. 42643; United

States v. Johnson Co., 9 Ct.Cust.Appls. 258, 270, T.D. 38215.

Appellant alleges in his brief that the evidence shows a change in his method of doing business from purchasing f.o.b. to purchasing ex-factory and that this change is represented by a negotiated contract. Appellant asserts:

> It is quite true that when Bud Berman started to buy from the supplier in Japan, he purchased on an FOB basis. However, as evidenced by Exhibit 1, Bud Berman not only negotiated, but finally reduced to contract form an agreement that he would purchase on an ex-factory basis, with the supplier paying the inland charges for his account and adding them to the ex-factory price.
>
> In view of these circumstances, the conclusion of the Third Division * * is entirely unwarranted. The Court stated—
>
> * * * ; and that the change in the invoicing to an "ex-factory" basis did not reflect a change in the manner of doing business, but was a transparent attempt to disguise the true nature of the transaction.
>
> Had only the form of invoicing been changed, there may have been some justification for this statement, but this is not the fact. The change in the invoicing was made after negotiations, and after a change in the contract between Bud Berman and his supplier. The statement of the Third Division carries with it an inference that what was done was illegal. The courts have held for years that an importer is entitled not only to change the character of his merchandise, but also to change his method of doing business in order to minimize his liability for customs duties. [Citing cases.]

■ Appellant's argument suggests that he believes the Customs Court to have been influenced by the intentions of appellant in changing his way of doing business with the seller, the change from f.o.b. to ex-factory pricing which appellant finds "finally reduced to contract form." While we agree with appellant that he may change his method of doing business to reduce customs duties, the critical question here is not one of motives but whether or not a *change was actually effected.* The Customs Court found no contractual change to have taken place and there is substantial evidence in the record to support this conclusion.

The original contracts between seller, Chubu Iryo Co. (Nippon's predecessor), and appellant called for, as appellant admits, f.o.b. pricing. They also called for letters of credit conditioned upon the transfer of a "Clear on Board Ocean Bill of Lading."

The agreement dated May 19, 1962, Exhibit 1, provided in Article 3 that "These Letters of Credit will set forth the following requirements * * *. Full set of Clear on Board Ocean Bill of Lading to the order of the Chemical Bank New York Trust Co., showing goods stored below deck." The change to ex-factory pricing is alleged to have first taken place with the following "Agreement of March 6, 1963", which we reproduce from Exhibit 1:

## AGREEMENT

March 6, 1963

This agreement is entered into between Chubu Iryo Co., Ltd. (the sellers) and Bud Berman Sportswear, Inc. (the buyers). It is the desire of both the sellers and the buyers to amend the arrangements between them both with respect to the sales of dress shirts and sport shirts. Commencing with the shipments of long sleeve dress shirts and sport shirts for fall, 1963, it is mutually agreed that these shipments will be paid for by the buyers to the sellers on the basis of "ex factory". The "ex factory" price shall be determined by taking the f.o.b. prices already agreed upon, and subtracting therefrom the flat sum of 25 cents per dozen.

The sellers agree to cause the aforementioned shirts to be shipped to and placed "on board" the ocean going vessel as they have done in the past. The sellers fur-

ther agree to pay on behalf of the buyers the necessary costs to store and ship the merchandise to the pier in Nagoya and to further place these shirts on board an ocean going vessel. The sellers will show on their invoice to the buyers, with substantiating invoices and/or documents for such costs as incurred by the sellers in placing and shipping the shirts "on board" the ocean going vessel.

It is mutually agreed between the sellers and the buyers that, although the price of the shirts is determined and sold on an "ex factory" basis, actual title to the goods shall not pass from the sellers to the buyers until such time as all of the conditions of the irrevocable letter of credit are met by the sellers.

It is further agreed that all charges between the sellers' factory and the pier in Nagoya are the actual costs incurred by the sellers and not estimated costs. All invoices and documents substantiating the actual costs will be made available to the buyers upon request for inspection by the sellers or United States Customs.

| For the Sellers | For the Buyers |
|---|---|
| (Signature) | (Signature) |
| Chubu Iryo Co., Ltd. | Bud Berman Sportswear Inc. |

The change to ex-factory pricing is allegedly represented by paragraphs 2 and 3 of this agreement, the new ex-factory price being computed by using the prior f.o.b. prices and subtracting the flat sum of 25 cents per dozen. The agreement specifies that although the price is ex-factory, "actual title to the goods shall not pass from the seller to the buyers until such time as all of the conditions of the irrevocable letter of credit are met by the sellers." The conditions of the letter of credit included a "Full Set of Clear on Board Ocean Bills of Lading," which could not be provided unless the goods were on board ship "stored below deck." This apparently strictly worded requirement in the contract be-

tween the seller and appellant that title to the goods does not pass until the goods are stored below deck suggests that the parties never actually changed to an ex-factory pricing policy. Accordingly, we find substantial evidence to support the conclusion of the Customs Court that the contracts between the seller and appellant were geared to an f.o.b. selling price.

Later agreements between the seller and appellant, referred to as "options" by the Customs Court, were found by that court never to have been accepted. These options are represented by the following language in the July 14, 1964, agreement between Nippon and appellant:

> If the Buyer elects to take delivery at the factory and assumes the responsibility and cost of arranging for the transportation from the factory to the vessel, the foregoing [f.o.b.] prices will be reduced accordingly. It is estimated that such transportation costs are 30¢ per dozen. [*]

The Customs Court found these options "were never accepted," and we find substantial evidence to support this conclusion. For were appellant to have so elected to take delivery at the factory, appellant would have had to do just that, "take delivery at the factory," as well as assuming responsibility and cost of transporting the goods from factory to ship. According to the terms of the agreements before us, title still passed to appellant under the basic agreement between the parties which required a bill of lading which showed the goods "stored below deck." Accordingly, we cannot find support in the record for the position of appellant that the "options" effected a *change* from the specified f.o.b. terms of the agreement.

Appellant argues in its brief that the appraisement is separable and asserts that, once separability is found, "there remains a 'factory price' which is presumed to be correct and on which the appellant relies to meet the requirements of this portion of the statute [402(f)(1)

---

* Similar language appeared in a January 13, 1964, agreement with such transportation costs estimated as 25¢ per dozen.

(B)] in that it 'fairly reflects the market value'."

While we express no views on the concept of separability here, or its applicability to "selected purchasers at wholesale" in section 402(f)(1)(B) we think the statement in Joseph A. Paredes & Co. v. United States, 63 Cust.Ct. 557, R.D. 11675 (1969) is apropos here:

This, however [the fact that the appraisements may be separable and the appellant is entitled to rely upon the presumption of correctness attaching to the appraiser's returns with respect to all elements of the appraisements except the contested addition], does not relieve the plaintiff from offering evidence to the effect that its claimed prices are in fact sales prices to a selected purchaser at wholesale where he bought for resale otherwise than at retail at prices which fairly reflected the market value of the imported merchandise.

See also Norco Sales Co. v. United States, 65 Cust.Ct. 778, R.D. 11732 (1970). Likewise here, appellant must still prove that sales were made on the alleged ex-factory basis, rather than f.o.b. ship. As noted above, we find substantial evidence to support the finding of the Customs Court that purchase was not made on an ex-factory basis. The decision and judgment of the Customs Court is accordingly affirmed.

Affirmed.